**Denny Franklin ROUSE, Plaintiff,**

v.

**FARMERS STATE BANK OF JEWELL, IOWA, David H. Hill, and Hill Investment Co., Defendants.**

No. C C92–3055.

United States District Court,
N.D. Iowa,
Central Division.

Sept. 29, 1994.

Gerald W. Crawford, Crawford Law Firm, Des Moines, IA, for plaintiff.

Nicholas V. Critelli, Jr., Nick Critelli Associates, Des Moines, IA, for defendants.

**MEMORANDUM OPINION**

BENNETT, District Judge.

## TABLE OF CONTENTS

| | | |
|-------|----------------------------------------------------------------------------|------|
| I. | PROCEDURAL BACKGROUND. | 1197 |
| II. | THE MOTION TO AMEND. | 1198 |
| III. | STANDARDS FOR SUMMARY JUDGMENT. | 1199 |
| IV. | FINDINGS OF FACT. | 1201 |
| | A. Undisputed Facts | 1201 |
| | B. Disputed Facts | 1201 |
| V. | LEGAL ANALYSIS. | 1202 |
| | A. The Whistle–Blower Count | 1202 |
| | 1. Personal Liability of Bank Director Under § 1831j | 1203 |
| | 2. Liability Of The Bank Under 1831j | 1204 |
| | a. Burdens Of Proof | 1204 |
| | b. Rouse's Participation In The Alleged Misconduct He Disclosed | 1210 |
| | B. The Wrongful Discharge Count | 1210 |
| | C. The Claim For Breach Of Covenant Of Good Faith And Fair Dealing | 1213 |
| | D. The Age Discrimination Claim | 1214 |
| | E. The Intentional Infliction of Emotional Distress Claim | 1215 |
| VI. | LACK OF A FEDERAL QUESTION. | 1219 |
| VII. | CONCLUSION. | 1220 |

This lawsuit arises out of the termination of a bank officer who was the president, cashier, and chief executive officer of the bank following examination of the bank by state and federal bank examiners. The officer's complaint alleges discharge in violation of a federal "whistle-blower" protection statute, 12 U.S.C. § 1831j, and state law claims of wrongful discharge, breach of covenant of good faith and fair dealing, age discrimination, and infliction of emotional distress. Defendants, the bank, bank holding company, and majority stockholder, have jointly moved for summary judgment on all claims on the grounds that there is a lack of evidence to generate a material issue of fact or that the claims are barred as a matter of law.

## I. PROCEDURAL BACKGROUND

Plaintiff Denny Franklin Rouse filed his complaint in this action on July 10, 1992, following his termination on November 15, 1991, as president, cashier, and chief executive officer of defendant Farmers State Bank of Jewell, Iowa (Bank). Additional defendants are David H. Hill, who is chairman of the board of directors for the Bank and owner, through a wholly owned holding company, defendant Hill Investment Co. (HIC), of a majority of the outstanding shares of the Bank. Rouse's complaint is in five counts. Count I alleges that Rouse was discharged in violation of the "whistle-blower" provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1831j. Count II alleges wrongful discharge of an "at will" employee contrary to public policy in violation of Iowa law. This count alleges that Rouse's discharge was without just cause, in violation of a reasonable expectation of permanent employment, occurred without prior complaint concerning his conduct and while he was performing his

duties adequately. Count III alleges breach of an implied covenant of good faith and fair dealing and asks this court to recognize such a cause of action under Iowa law. Count IV alleges age discrimination in violation of Iowa Code Ch. 216 (1993). Count V alleges infliction of emotional distress in violation of Iowa common law on the ground that discharging Rouse constituted outrageous conduct.[1] Rouse demanded a jury trial of this action. On September 19, 1994, Rouse moved for leave to amend the complaint to add a sixth count alleging defamation.

Defendants answered the original complaint on October 2, 1992, and additionally asserted affirmative defenses. Defendants asserted that Rouse's state law claims were preempted by 12 U.S.C. § 1831j, that Rouse was not entitled to "whistle-blower" protection under 12 U.S.C. § 1831j because he deliberately caused and participated in the alleged violation of laws or regulations he allegedly reported to the FDIC, that Rouse was an "at-will" employee terminable with or without cause, that Rouse's claims of emotional distress were barred by operation of the Iowa Workers Compensation Act, Iowa Code Ch. 85, and that Rouse was terminated for good cause and legitimate business concerns, including misconduct.

The court amended the scheduling order in this matter on three occasions, in part because of a serious accident involving Hill. Jury trial was finally set for October 17, 1994. On August 11, 1993, in an order amending the scheduling order, the court set November 1, 1993, as a deadline for motions to amend pleadings under Federal Rule of Civil Procedure 15. While the parties sought and received from the court various extensions of other deadlines, the November 1, 1993 deadline for motions to amend was nev-

---

1. Defendants also state their belief that "there is verbiage to indicate that Plaintiff will allege that Defendants also breached an employment contract with Rouse when they terminated him," and have moved for summary judgment on any such claim in an abundance of caution. Defen- dants' Motion for Summary Judgment, p. 22. Rouse's resistance to the motion does not assert that a breach of contract claim is viable, and therefore the court will limit its discussion to claims actually pleaded.

er extended. The deadline for dispositive motions was set for August 15, 1994. On that date, defendants filed the present motion for summary judgment. Rouse resisted the motion on September 9, 1994, and defendants filed a reply on September 16, 1994.

Hearing was held on the motion for summary judgment and on Plaintiff's motion to amend on September 27, 1994. Rouse was represented by counsel Gerald W. Crawford, Crawford Law Firm, Des Moines, Iowa. Defendants Bank, HIC, and Hill were represented by counsel Nicholas V. Critelli, Jr., Nick Critelli Associates, Des Moines, Iowa. These matters are now fully submitted.

## II. THE MOTION TO AMEND

■ The court will first consider Rouse's motion to amend, then turn to consideration of defendants' motion for summary judgment. On September 19, 1994, Rouse moved for leave to amend the complaint to add a sixth count alleging defamation. *Fed. R.Civ.P.* 15(a) states that leave to amend "shall be freely given when justice so requires." However, the policy favoring liberal allowance of amendment does not mean that the right to amend is absolute. *Thompson–El v. Jones,* 876 F.2d 66, 67 (8th Cir.1989). The Supreme Court has interpreted Rule 15(a) to mean that "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment—leave to amend should be granted." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The court must consider the prejudice to the opponent, whether additional discovery would be required, and whether the court's docket would be adversely affected. *Elema–Schonander, Inc. v. K.C.F. Medical Supply,* 869 F.2d 1124 (8th Cir.1989).

■ Grant or denial of leave to amend is within the trial court's discretion, *Butler v. City of North Little Rock, Ark.,* 980 F.2d 501, 506 (8th Cir.1992), but the trial court should state reasons for its denial of a motion to amend. *See Twin City Const. v. Turtle Mountain Indians,* 911 F.2d 137, 139 (8th Cir.1990) (refusal to state reasons for denial suggests abuse of discretion); *Thompson–El v. Jones,* 876 F.2d 66, 67 n. 3 (8th Cir.1989) (trial court's failure to articulate its reasons for denying the motion is not *per se* an abuse of discretion but is not good policy).

■ In the present case, however, Rouse's motion to amend comes well after the applicable scheduling deadline—some ten months late. Pursuant to *Fed.R.Civ.P.* 16(b), the court has the authority to enter scheduling orders. *Fed.R.Civ.P.* 16(b) states, in pertinent part, that a court's scheduling order "shall not be modified except upon a showing of *good cause* and by leave of the district judge or, when authorized by local rule, by a magistrate judge." *Fed.R.Civ.P.* 16(b) (Emphasis added). The reason for the "good cause" requirement for modification of a court's scheduling order is that

[s]uch orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved. *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951 (2nd Cir.1970); *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987); *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D.Me.1985).

*Kramer v. The Boeing Company,* 126 F.R.D. 690, 696 (D.Minn.1989). A scheduling order is an important tool in controlling litigation. *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (S.D.Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.*

The court in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir.1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system. The court stated:

> [d]elays [in litigation] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Id.* at 792. Adherence to reasonable deadlines is therefore critical to maintaining integrity in court proceedings.

 Although the Eighth Circuit Court of Appeals has not had reason to pass upon the issue, the Ninth Circuit Court of Appeals distinguished between the requirements of Rule 15(a) and Rule 16(b).

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) (citations omitted). Here, the proposed amendment would have the effect of reopening the pleadings shortly before trial, with the effect of requiring additional discovery and trial preparation. Furthermore, defense counsel stated at the hearing on these motions that allowance of the amendment would necessitate substantial new discovery on the defamation claim concerning totally new issues both factually and legally in this litigation and a continuance of the trial date. The court agrees. Additional discovery and trial preparation which results from late amendment constitutes prejudice of sufficient magnitude to deny a motion to amend. *See Zurn Constructors, Inc. v. B.F. Goodrich Co.,* 746 F.Supp. 1051, 1055 (D.Kan.1990). *See also Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1392 (8th Cir.1986) (district court did not abuse discretion in denying amendment where motion was filed shortly before trial was to commence, the litigation had been pending three years, and the deadline for pleadings and motions has passed). Plaintiff's motion to amend is therefore denied.

## III. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini, supra,* at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

> Rule 56. Summary Judgment
>
> (b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judg-

ment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Rouse, and give Rouse the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving parties, the Bank, Hill, and HIC, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–54); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The Bank, Hill, and HIC are not required by *Rule* 56 to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Rouse is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. ConAgra,* 784 F.Supp. 1394, 1395 (1992). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). "The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Martin,* 784 F.Supp. at 1395.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial

---

2. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel, supra,* at 394.

judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendants' motion for summary judgment.

## IV. FINDINGS OF FACT

### A. Undisputed Facts

The following facts are undisputed. Rouse became president, cashier, and chief executive officer of the Bank in September of 1987. There was no written agreement between the Bank and Rouse concerning Rouse's employment. Rouse's duties included running the day-to-day operations of the Bank, supervising personnel, and chairing the Bank's Loan Committee.

In February of 1991, the Iowa Department of Commerce, Banking Division, conducted an on-sight examination of the Bank. Following this examination, the Bank's "CAMEL" rating was reduced.[3] The Bank was examined again in August of 1991, this time by the Federal Deposit Insurance Corporation (FDIC). During the period when federal examiners were in the Bank, Rouse left for a previously scheduled vacation. Defendant Hill asserts that Rouse's "abandonment" of

the bank during the examination required him to return to Iowa on short notice to face inquiries from the examiners. The FDIC indicated its intention to require the Bank to enter into a "Cease and Desist" Order, permitting the Bank to continue operations subject to restrictive rules and regulations. The Bank and the FDIC eventually entered into a Memorandum of Understanding (MOU) to permit continued operation of the Bank. Hill states that it was his belief that the MOU with the FDIC "mandated" Rouse's removal as president of the Bank. The MOU describes the duties of the new president of the Bank, Robert Baird, and does not mention Rouse. The MOU specifically restricts Hill's own involvement in the day-to-day operations of the Bank. Memorandum of Understanding, Plaintiff's Exhibit 1 to Resistance to Motion for Summary Judgment.

Rouse was terminated by the Bank's Board of Directors on November 15, 1991. At the time of his termination, Rouse was also a member of the Board of Directors. The other members were defendant Hill and Dennis Samuelson. Rouse, who was fifty-four at the time of his termination, was replaced as president of the Bank by Robert Baird, who was forty-two.

### B. Disputed Facts

Rouse disputes the extent to which he exerted total day-to-day control over the Bank during his tenure as president. Rouse asserts that Hill actually initiated seventy percent of the "problem" loans investigated by the FDIC. Rouse also asserts that he provided information to FDIC examiners concerning some of those loans, and other activities of the Bank he believed to be improper. Rouse asserts that Hill had reason to know that Rouse had made disclosures to FDIC examiners, but Hill denies any knowledge of Rouse's contacts with the examiners. Rouse also asserts that FDIC officials believed that Rouse was capable of continuing to run the Bank and that the FDIC was more concerned with removing Hill from day-to-day operations of the Bank. Rouse

---

**3.** Defendants state that this "CAMEL" rating "which is assessed by the regulatory agency is an indication of the faith that the regulators have in the institution." Defendants' Motion for Summary Judgment, p. 16.

also asserts that as a result of the actions of defendants he has suffered destruction of his career and reputation in the community, anxiety and high blood pressure requiring medication, nightmares, headaches, dizziness, and loss of enthusiasm for his career.

Defendants assert that Rouse was terminated for misconduct. They allege that Rouse's termination was the result of the Bank's worsening condition during Rouse's tenure, Rouse's departure on a vacation during the critical bank examination, and Rouse's noncompliance and difficulty with regulators at his previous employment, which resulted in Rouse's personal payment of money penalties. These problems, defendants state, at a time when the Bank would have to work closely with regulators, led the defendants to make the business decision to remove Rouse. Defendants also assert that Rouse himself initiated two loans to people Rouse described as partners[4] in a memorandum concerning the loans in January of 1991. If these two loans were to partners, they would have exceeded the Bank's lending limit, but defendants contend that Rouse never disclosed this information to the Loan Committee. The Bank also denies that the loan recipients in question were in fact partners. These allegedly illegal transactions in which Rouse allegedly participated were among the matters Rouse asserts he reported to FDIC officials.

4. The court is unable to determine from the record before it or the briefs of the parties whether the "partners" were partners of Rouse, the Bank, Bank directors or officers, or each other.

5. The "whistle-blower" provisions of FIRREA, 12 U.S.C. § 1831j, are as follows:

§ 1831j. Depository institution employee protection remedy.
(a) In general.
(1) Employees of depository institutions. No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding—
(A) a possible violation of any law or regulation; or

## V. LEGAL ANALYSIS

Defendants argue that if summary judgment is granted on the "whistle-blower" count, that Rouse's wrongful discharge and infliction of emotional distress claims under Iowa law must also fail. They argue that it is dismissal for whistle-blowing that Rouse has asserted is the conduct in violation of public policy making his discharge wrongful. They also assert that it is dismissal for whistle-blowing that Rouse has alleged is the outrageous conduct on which he has based his emotional distress claim. Although the court does not agree with this reading of the complaint, the whistle-blower charge is the only federal question in this case, and the court will therefore consider it first.

### A. The Whistle–Blower Count

Rouse alleges that his termination was the result of and followed closely upon the heels of his reporting of certain misconduct by the Bank to FDIC officials in violation of 12 U.S.C. § 1831j. Defendants argue that there is no genuine issue of material fact that they were unaware of any reporting by Rouse to anyone, so that they could not have retaliated for whistle-blowing. Rather, they argue that Rouse was terminated for business reasons during a critical time in the Bank's existence. Furthermore, defendants argue that Hill cannot be held personally liable under 12 U.S.C. § 1831j,[5] as liability under the statute

(B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
by the depository institution or any director, officer, or employee of the institution.
(2) Employees of banking agencies. No Federal banking agency, Federal home loan bank, Federal reserve bank, or any person who is performing, directly or indirectly, any function or service on behalf of the Corporation may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety by—
(A) any depository institution or any such bank or agency;

only goes to the financial institution itself. The court will first consider Hill's personal liability under the statute, then turn to the question of whether Rouse has presented a genuine issue of material fact concerning violation of the statute such that this count can survive summary judgment.

### 1. Personal Liability of Bank Director Under § 1831j

 Hill argues that he cannot be held personally liable under 12 U.S.C. § 1831j because he is not a "federally insured institution" and the statute has no provision for individual liability, citing *Hicks v. Resolution Trust Corp.*, 767 F.Supp. 167, 172–73 (N.D.Ill.1991). Rouse argues that *Hicks* is distinguishable because the Bank in this case is simply an alter ego for Hill, the majority stockholder.

In *Hicks*, the individual defendants also sought summary judgment on a claim brought pursuant to § 1831j on the ground that the whistle-blower statute does not apply to individual officers or directors. *Hicks, supra,* at 171. The court agreed:

> The plain language of the statute supports defendants' contention. The whistle blower statute provides that a "federally insured depository institution" may not discharge or otherwise discriminate against employees based upon their conduct in providing information to banking agencies. 12 U.S.C. § 1831j(a). The remedies enumerated in the whistle blower statute permit the court to "order the depository institution which committed the violation" to reinstate the employee, pay compensatory damages or otherwise act to remedy any past discrimination. 12 U.S.C. § 1831j(c). Furthermore, 12 U.S.C. § 1813 defines the terms used in the whistle blower statute eliminating the need for further statutory interpretation. Depository institutions consist of any bank or savings association, 12 U.S.C. § 1813(c)(1), while an institution-affiliated party includes the directors, officers, employees or controlling stockholders for an insured depository institution. 12 U.S.C. § 1813(u). Since the whistle blow-

(B) any director, officer, or employee of any depository institution or any such bank;

(C) any officer or employee of the agency which employs such employee; or

(D) the person, or any officer or employee of the person, who employs such employee.

**(b) Enforcement.** Any employee or former employee who believes he has been discharged or discriminated against in violation of subsection (a) may file a civil action in the appropriate United States district court before the close of the 2–year period beginning on the date of such discharge or discrimination. The complainant shall also file a copy of the complaint initiating such action with the appropriate Federal banking agency.

**(c) Remedies.** If the district court determines that a violation of subsection (a) has occurred, it may order the depository institution, Federal home loan bank, Federal Reserve bank, or Federal banking agency which committed the violation—

(1) to reinstate the employee to his former position;

(2) to pay compensatory damages; or

(3) take other appropriate actions to remedy any past discrimination.

**(d) Limitation.** The protections of this section shall not apply to any employee who—

(1) deliberately causes or participates in the alleged violation of law or regulation; or

(2) knowingly or recklessly provides substantially false information to such an agency or the Attorney General.

**(e) Federal banking agency defined.** For purposes of subsections (a) and (c), the term "Federal banking agency" means the Corporation, the Board of Governors of the Federal Reserve System, the Federal Housing Finance Board, the Comptroller of the Currency, and the Director of the Office of Thrift Supervision.

**(f) Burdens of proof.** The legal burdens of proof that prevail under subchapter III of chapter 12 of title 5, United States Code [5 U.S.C. § 1221 et seq.], shall govern adjudication of protected activities under this section. 12 U.S.C. § 1831j. The burdens of proof under 5 U.S.C. § 1221, The Whistleblower Protection Act, referred to in 12 U.S.C. § 1831j, are as follows:

**(e)(1)** Subject to the provisions of paragraph (2), in any case involving an alleged prohibited personnel practice as described under section 2302(b)(8), the Board shall order such corrective action as the Board considers appropriate if the employee, former employee, or applicant for employment has demonstrated that a disclosure described under section 2302(b)(8) *was a contributing factor* in the personnel action which was taken or is to be taken against such employee, former employee, or applicant.

(2) Corrective action under paragraph (1) may not be ordered *if the agency demonstrates by clear and convincing evidence* that it would have taken the same personnel action in the absence of such disclosure.

5 U.S.C. § 1221(e) (emphasis added).

er statute provides plaintiff with a remedy only against the depository institution and not against the institution's directors, officers, employees or controlling stockholders, Count II will be dismissed as to the individual defendants in both their official and individual capacities....

*Hicks, supra,* 171–72. This court agrees with the reasoning of the district court in *Hicks.* Furthermore, the court believes that the analysis of the statute in *Hicks* answers Rouse's "alter ego" argument. "Institution-affiliated" parties, defined in 12 U.S.C. § 1813(u), including controlling stockholders, are not subject to liability under § 1831j, which specifies the liability of only the depository institution. 12 U.S.C. § 1831j(a). By the same token, HIC, which holds the Bank's stock, cannot be held liable. Summary judgment will therefore be granted in favor of individual defendant David Hill and defendant HIC on Rouse's whistle-blower claim under 12 U.S.C. § 1831j.

## 2. Liability Of The Bank Under 1831j

### a. Burdens Of Proof

The parties have argued that a whistle-blower claim under § 1831j must be analyzed according to the procedures applicable to other retaliation claims under Title VII, citing *Ellis v. NCNB Texas National Bank,* 842 F.Supp. 243, 246 (N.D.Texas 1994).[6] In *Ellis,* the court first required that the plaintiff establish a *prima facie* case of retaliation by proving that the plaintiff (1) engaged in protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal connection between participation in the protected activity and the adverse employment decision. *Ellis, supra,* at 246. The court considered this *prima facie* showing to be a modification of the so-called

"McDonnell Douglas" factors, after *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* The court then applied the shifting burdens of production and proof most recently refined by the United States Supreme Court in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). *Id.* 842 F.Supp. at 247.

The Eighth Circuit Court of Appeals recently summarized this analytical procedure in *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1108 (8th Cir.1994). In employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Gaworski, supra,* at 1108 (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)).

Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle him to prevail unless contradicted and overcome by evidence produced by the defendant. *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the questioned employment decision for a legiti-

---

**6.** In *Ellis v. NCNB Texas National Bank,* 842 F.Supp. 243 (N.D.Texas 1994), the court stated that

the parties agree that FIRREA's whistleblower statute is analogous to antiretaliation provisions of other employment discrimination statutes and therefore should receive treatment under the standards of proof of those analogous statutes. The Court agrees with that the policies underlying these similar statutes warrant parallel treatment here, and other courts faced with like issues have similarly responded.

*Ellis,* 842 F.Supp. at 245 (citing cases under the Michigan and Minnesota whistle-blower protection statutes). Although in the present case, the parties have also agreed that the FIRREA whistle-blower claim should be analyzed under Title VII standards, this court does not agree that that is the proper analysis. Nonetheless, the court will accede to the parties wishes to the extent that the claim will first be analyzed under Title VII standards, then under the standards this court believes to be required by the statute itself.

mate, non-discriminatory reason. *Id.* The employer's explanation of its actions must be "clear and reasonably specific," *Burdine, supra,* 450 U.S. at 258, 101 S.Ct. at 1096, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir.1994) (citing *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1019 (11th Cir. 1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's, supra,* at ——, 113 S.Ct. at 2749. The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *Aikens, supra,* 460 U.S. at 715, 103 S.Ct. at 1481–82; *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir.1993). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's, supra,* at ——, 113 S.Ct. at 2749 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

The Eighth Circuit Court of Appeals has applied the three-prong *prima facie* showing described in *Ellis* in a variety of employment retaliation cases. *See, e.g., Schweiss v. Chrysler Motors Corp.,* 987 F.2d 548, 549 (8th Cir.1993) (three-prong *prima facie* showing of retaliation for reporting violations to OSHA); *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992) (same three-prong showing in ERISA retaliation case); *Valdez v. Mercy Hosp.,* 961 F.2d 1401, 1403 (8th Cir.1992) (same showing in case alleging retaliatory discharge for filing Title VII race discrimination claim); *Wentz v. Maryland Cas. Co.,* 869 F.2d 1153, 1154 (8th Cir.1989) (same showing in case alleging retaliatory discharge in violation of the ADEA); *Tart v. Levi Strauss and Co.,* 864 F.2d 615,

617 (8th Cir.1988) (same showing in case alleging retaliation for filing a sex discrimination claim with the EEOC); *Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1390 (8th Cir.1988) (same showing in case alleging retaliation for filing a Title VII complaint of sex discrimination), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *Jackson v. Missouri Pacific R.R.,* 803 F.2d 401, 406–07 (8th Cir.1986) (same showing for retaliation for filing race discrimination claims under § 1981 and § 2000e); *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 416 (8th Cir.1984) (retaliation claims brought under § 1981 require same three-prong *prima facie* showing as those brought under Title VII); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980) (same showing in case alleging retaliation for filing a Title VII complaint of race discrimination), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

 The third prong of the showing, causal connection, may be met, for example, by "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Schweiss, supra,* at 549 (quoting *Rath, supra,* at 1090; discharge followed report to OSHA by only four days). *See also Rath, supra,* at 1090 (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); *Keys v. Lutheran Family and Children's Services of Missouri,* 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); *Womack, supra,* at 1296 (twenty-three days sufficient proximity for causal connection). In each of the cases, however, where temporal proximity was held to be sufficient to establish causal connection, the knowledge of the defendant of the employee's protected activity was not at issue. *See, e.g., Schweiss, supra,* at 550 (defendant knew of OSHA violation reports, although defendant did not know which individual employee had filed the reports); *Rath, supra,* at 1090 (employee was fired after receiving rep-

rimand for complaining about proposed changes to ESOP retirement plan); *Couty, supra,* at 148 (defendants knew of employee's threats to report various safety and quality-control complaints to the Nuclear Regulatory Commission, and employee did file such complaints after he was discharged); *Keys, supra,* at 357 (defendant did not deny that he knew of employee's filing of EEOC claim or that discharge of employee was in retaliation for filing EEOC claim); *Womack, supra,* at 1295 (employee fired after defendant was served with class action discrimination lawsuit initiated by employee). *See also Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990). In these cases, therefore, the knowledge of the defendant of the employee's protected activities was not a necessary element of the employee's *prima facie* case because knowledge was either already established or conceded.

The Eighth Circuit Court of Appeals has also used an alternative formulation of the *prima facie* showing in retaliation cases that specifically requires a showing that the employer had knowledge of the employee's protected activity and a showing of temporal proximity of the discharge to the protected activity to establish a causal connection. This formulation requires a showing that (1) the employee engaged in a protected activity, (2) the defendant was aware of the plaintiff's engagement in the protected activity, (3) the plaintiff was subsequently discharged, and (4) that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive. *See, e.g., Figgous v. Allied/Bendix Corp., Allied Signal,* 906 F.2d 360, 362 (8th Cir.1990) (applying this formulation, but finding insufficient temporal proximity); *Couty, supra,* at 148 (citing *Keys, supra,* for this formulation); *Keys, supra,* at 358 (this formulation). However, in *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 365 (8th Cir.1994), the court rejected the trial court's determination that the plaintiff had not made a *prima facie* showing of retaliation because the plaintiff had not shown that the employer knew that the employee in question engaged in protected activity. The court concluded that

[c]areful reading of *Wolff* [*v. Berkley Inc.,* 938 F.2d 100, 103 (8th Cir.1991),] and *Gilreath* [*v. Butler Mfg. Co.,* 750 F.2d 701, 703 (8th Cir.1984),] does not support nor compel a rule that would require, in every case of alleged retaliatory discharge, that plaintiff show that the employer knew to an absolute certainty the identity of the employee who engaged in protected activity. Neither does it recast the structure for the court's analysis in such cases.

*Id.* at 365–66. The court therefore relied on the three-prong *prima facie* showing described above, subsuming any showing of the employer's knowledge of the plaintiff's engagement in protected activity as part of a showing of causal connection. *Id.* The court considered that "[i]t would be a strange rule, indeed, that would protect an employee discharged because the employer actually knew he or she had engaged in protected activity but would not protect an employee discharged because the employer merely believed or suspected he or she had engaged in protected activity." *Id.* at 366. *See also NLRB v. Ritchie Mfg. Co.,* 354 F.2d 90, 98 (8th Cir.1966) (fact that employer thought or believed terminated employee was a union activist and that belief was the basis for employee's discharge was sufficient to establish violation of NLRA—plaintiff need not show employer actually knew of employee's union activity); *Brock v. Richardson,* 812 F.2d 121, 124–25 (3d Cir.1987) (discharge motivated by erroneous belief on part of employer that employee engaged in protected activity under the FLSA sufficient to trigger anti-retaliation provisions of the Act); *Donovan v. Peter Zimmer America, Inc.,* 557 F.Supp. 642, 652 (D.S.C.1982) (discharge of three employees because employer not able to determine which of the three actually filed OSHA complaint violates anti-retaliation provisions of OSHA as to all three).

In the present case, Rouse argues that he has made the necessary *prima facie* showing of retaliation. Rouse contends that he provided information to the FDIC, he was terminated from his position, and his termination followed the FDIC examination during which he supplied information exposing possible violations of laws or regulations. Rouse argues that his version of these events is sup-

ported by the sworn statement of FDIC examiner Brad Havran. Rouse therefore argues that the burden of production shifts to defendants to show a legitimate, non-retaliatory reason for his dismissal. Rouse argues that he has generated a genuine issue of material fact on the legitimacy of defendants' non-retaliatory reasons for his discharge because the FDIC did not mandate his removal, and he had never had poor performance evaluations prior to his discharge.

Defendants argue that Rouse has failed to make the necessary *prima facie* showing. Defendants argue that Rouse has failed to produce any evidence of a causal connection between his alleged reporting of misconduct to the FDIC and his discharge. Defendants also point to Mr. Havran's statements as demonstrating that Havran does not know if Hill was aware that Rouse had provided any information to the FDIC and to Rouse's own deposition in which he can show only his suspicion, without supporting evidence, that Hill learned of his contacts with the FDIC.

From Rouse's deposition and Havran's statements, it appears that Rouse was assured of the confidentiality of his contacts with the FDIC and that no one has any specific reason to believe or evidence to support the suspicion that that confidentiality was breached. The defendants assert that they were unaware of Rouse's contacts with the FDIC, and believed any information of misconduct the FDIC obtained came from the FDIC's own examinations of the Bank.

 Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). Rouse has failed to produce substantial evidence of a causal connection between his reporting of what he believed to be misconduct by the Bank to the FDIC and his discharge and instead asks this court to rely on

a mere suspicion to preclude summary judgment. The statement of Mr. Havran and Rouse's own deposition show that Rouse made his report to the FDIC with an assurance of confidentiality. There simply is no evidence in the summary judgment record that this pledge of confidentiality was breached. More importantly, there is no evidence in the summary judgment record that Hill or anyone else at the Bank knew of Rouse's alleged whistle-blowing activities. This court concludes that a suspicion of retaliatory discharge is not enough when there is no evidence that defendants were aware of or ever even suspected that anyone at the Bank had made a disclosure to the FDIC.

Although the court concludes that defendants would be entitled to summary judgment under the *prima facie* showing typically required for a retaliatory discharge claim under Title VII, the court believes that the statute in question actually establishes different burdens of proof. Subsection (f) of 12 U.S.C. § 1831j states as follows:

> (f) **Burdens of proof.** The legal burdens of proof that prevail under subchapter III of chapter 12 of title 5, United States Code [5 U.S.C. § 1221 *et seq.*], shall govern adjudication of protected activities under this section.

Consequently, although the *Ellis* court applied Title VII standards to whistle-blower claims under 12 U.S.C. § 1831j, *Ellis,* 842 F.Supp. at 245, the statute itself provides for a different analysis, that found in the Whistleblower Protection Act of 1989 (WPA) for employees of federal agencies, 5 U.S.C. § 1221 *et seq.* That statute is quoted in pertinent part at n. 5 of this ruling. Under this statute, the complainant's *prima facie* burden is to show that his or her whistleblowing *was a contributing factor* in the retaliatory actions taken against him or her. 5 U.S.C. § 1221(e)(1). If the complainant meets this burden, then the employer must *demonstrate by clear and convincing evidence* that it would have taken the same personnel action in the absence of such disclosure. 5 U.S.C. § 1221(e)(2).

 This allocation of burdens differs significantly from that applied to Title VII

cases in two respects. First, in establishing a *prima facie* case, the plaintiff under either 12 U.S.C. § 1831j or 5 U.S.C. § 1221(e) must establish that his or her whistle-blowing was "a contributing factor" in adverse employment actions rather than demonstrating "a causal connection" between engaging in protected activity and adverse employment actions as in a Title VII case. Second, while the defendant in a Title VII action may rebut the presumption of retaliation by *producing* evidence of a legitimate, non-retaliatory reason for the employment action taken, the defendant under the whistle-blower statutes must *demonstrate by clear and convincing evidence* that it would have made the same employment decision in the absence of plaintiff's disclosures. Thus, the court concludes that the shifting of burdens for Title VII cases articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny is inapplicable to FIRREA whistle-blower retaliation cases. Rather, under the whistle-blower statutes, the court engages in a two-prong analysis: (1) the plaintiff must establish a *prima facie* case of retaliation by showing that his or her disclosures were a contributing factor in adverse employment actions; then (2) the burden of *persuasion* shifts to the defendant to demonstrate by the high standard of clear and convincing evidence that it would have made the same employment decision in the absence of plaintiff's disclosures.

The burden on the plaintiff in a whistle-blower case appears to be less than that upon the plaintiff in a Title VII case, and that upon the defendant is heightened. Although the Federal Circuit Court of Appeals has held that the burden does not shift to the defendant in a case under the WPA whistle-blower statute until the plaintiff has established existence of a prohibited personnel practice by a preponderance of the evidence, *Marano v. Department of Justice*, 2 F.3d 1137, 1141 (Fed.Cir.1993), the legislative history reveals that the burden on the plaintiff was intended to be lessened. The Federal Circuit Court of Appeals considered the legislative intent behind the WPA in *Marano, supra.* The court noted that the WPA amended the Civil Service Reform Act of 1978, 5 U.S.C. § 2302 *et seq.*, which required the whistleblower to establish, *inter alia,* that the disclosure constituted a "significant" or "motivating" factor in the adverse employment decision. *Id.* at 1140. Congress intended to remove this "excessively heavy burden." *Id.* (quoting 135 Cong.Rec. 5033 (1989) (Explanatory Statement on S.20, 101st Cong., 1st Sess.1989)).

> [U]nder the WPA, 5 U.S.C. § 1221(e)(1), [the whistleblower] must evidence only that his protected disclosure played a role in, or was "a contributing factor" to, the personnel action taken:
>
>> The words "a contributing factor" ... mean *any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.* This test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a "significant", "motivating", "substantial", or "predominant" factor in a personnel action in order to overturn that action.
>
> 135 Cong.Rec. 5033 (1989) (Explanatory Statement on S. 20) (emphasis added); *see also* 135; Cong.Rec. 5032, 5033 (Explanatory Statement on S. 20 should be read in conjunction with the exhaustive legislative history of S. 508, 100th Cong., 2d Sess. (1988); 135 Cong.Rec. 4513 (1989) (Joint Explanatory Statement on S. 508)); 5 U.S.C. §§ 1214(b)(4)(B)(i) & 1221(e)(1). This substantial reduction of the whistleblower's burden evidences that a personnel action, taken "because of" a protected disclosure, or "as a result of" a prohibited personnel practice, and therefore encompassed by sections 2302(b)(8) and 1221(a), may be taken "because of" or "as a result of" many different factors, only one of which must be a protected disclosure and *a* contributing factor to the personnel action in order for the WPA's protection to take effect. Indeed, the legislative history of the WPA emphasizes that "any" weight given to the protected disclosure, either alone or even in combination with other factors, can satisfy the "contributing factor" test.

*Id.* at 1140.

 Even with the lesser burdens imposed upon him, Rouse has failed to demon-

strate that his disclosures were a contributing factor in his discharge because he has failed to present any specific facts in support of that contention. Rouse could survive a motion for summary judgment if he could demonstrate that his discharge was in part because of his disclosures and in part because of the displeasure of Bank officials with his performance. However, Rouse has presented the court with no evidence but his suspicion that his disclosures, and not displeasure of Bank officials with his performance, caused his discharge. Specifically, Rouse has failed to generate a genuine issue of material fact as to whether or not anyone but himself and the FDIC officials knew of his disclosures or that defendants suspected any disclosures had been made by Bank employees. The court is therefore unable to give any weight to Rouse's disclosures as a factor in his discharge. The court does not believe Rouse's suspicion of retaliation is sufficient even under the lesser burdens imposed by the FIRREA whistle-blower statute to meet his *prima facie* burden.

Although the burden on the plaintiff to show the degree to which his protected activity was a factor in his discharge in a FIRREA or WPA whistle-blower case is generally less than that upon the plaintiff in a Title VII case, the legislative history of the WPA demonstrates that a showing of both knowledge of the defendant and temporal proximity is still required to show that the disclosures were a "contributory factor."

One of the many possible ways to show that the whistleblowing was a factor in the personnel action is to show that the official taking the action knew (or had constructive knowledge) of the disclosure and acted within such a period of time that a reasonable person could conclude that the disclosure was a factor in the personnel action.

*Wagner v. E.P.A.*, 51 M.S.P.R. 337 n. 6 (1991) (quoting 135 Cong.Rec. H749 (daily ed. Mar. 21, 1989), and also citing 135 Cong.Rec. S2784 (daily ed. Mar. 16, 1989), and *Gergick v. General Services Admin.*, 43 M.S.P.R. 651, 661 (1990)). In *Wagner*, the Merit System Protection Board held that although the agency officials charged with the retaliatory discharge knew of the plaintiff's disclosures,

they did not know until after they had filed the adverse performance evaluation of which plaintiff complained. *Id.* Even though the negative performance evaluation was actually acted upon after the plaintiff had made further disclosures, the Board held that the temporal relationship alone was inadequate to establish a *prima facie* case. *Id.* It follows from *Wagner* and the legislative history of 5 U.S.C. § 1221(e) that mere temporal proximity of the disclosures and the employment action would still not be sufficient to establish a *prima facie* case under the FIRREA whistle-blower statute. Rather, the plaintiff under this whistle-blower statute must establish both temporal proximity *and* actual or constructive knowledge of the defendant of the disclosures at the time of the employment decision to meet the "contributory factor" test. *Wagner, supra.* Rouse can demonstrate only temporal proximity in this case and, the court concluded above, no more than a suspicion that defendants knew of his disclosures to FDIC officials. Rouse therefore cannot meet the burdens of the FIRREA whistle-blower statute to establish a *prima facie* case of retaliation.

Because the court concludes that Rouse cannot meet the burdens of a *prima facie* showing imposed by § 1831j, it need not reach the question of whether or not defendants here could meet the heightened standards of the whistle-blower statutes concerning their legitimate, non-discriminatory reasons. *Marano, supra.* However, the court notes that while the defendant's burden to rebut the presumption of retaliation in a Title VII case by producing evidence of a non-retaliatory reason for its actions is "exceedingly light," *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994) (citing *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994)), the burden upon the defendant under the whistle-blower statute to demonstrate a legitimate, non-retaliatory reason "by clear and convincing evidence" is much more substantial. 5 U.S.C. § 1221(e)(2).

Because the court concludes that Rouse cannot make the necessary *prima facie* showing in support of his claim of retaliation in violation of 12 U.S.C. § 1831j under either

the standards applicable to retaliation cases under Title VII or the standards referred to in the statute itself and found in 5 U.S.C. § 1221(e), summary judgment will be granted in favor of defendants on Rouse's whistleblower claim.

### b. Rouse's Participation In The Alleged Misconduct He Disclosed

As yet another ground for summary judgment, defendants argue that Rouse participated in the alleged misconduct he disclosed to FDIC officials. Therefore, they argue, Rouse is precluded from making a whistleblower claim by the limitations stated in 12 U.S.C. § 1831j(d). Rouse asserts that there is a genuine issue of material fact as to whether or not he participated in the alleged violation of law or regulation precluding summary judgment.

In *Hicks v. Resolution Trust Corp.,* 970 F.2d 378 (7th Cir.1992), the Seventh Circuit Court of Appeals upheld the trial court's grant of summary judgment against plaintiff on his claim of retaliation in violation of § 1831j on the ground that the plaintiff had participated in the alleged violations disclosed to the Federal Home Loan Bank Board (FHLBB). 970 F.2d 378, 383. The trial court found that the plaintiff admitted in several interrogatories that he signed and submitted a memo to FHLBB examiners indicating that the bank in question was in compliance with the Community Reinvestment Act, notwithstanding his knowledge to the contrary. *Id.* The court of appeals agreed that the plaintiff's actions fell within the purview of the limitation on protections of § 1831j found in subsection (d) of that statute and quoted in the margin in subdivision IV.A. of this ruling. *Id.*

In the present case, the defendants have submitted only the minutes of the loan committee meeting indicating that Rouse recommended certain loans. However, defendants have failed to provide evidence that the loans indicated in the committee minutes are the loans Rouse allegedly reported to the FDIC as in violation of the Bank's lending limits. Unlike defendants in *Hicks,* defendants here have not presented any admission by Rouse that he participated in activities in violation of laws or regulations. The lack of the nec-

essary evidentiary link between the loan committee minutes provided and the alleged disclosure by Rouse, and Rouse's denial of any participation in alleged violations do present the court with a genuine issue of fact as to whether Rouse's whistleblower claim would be barred by § 1831j(d). However, because this issue of fact is not material, in light of the court's conclusions that Rouse cannot make out a *prima facie* case of retaliation, the issue of fact does not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment."). Summary judgment in favor of defendants on Rouse's FIRREA "whistle-blower" claim will be granted for the reasons stated above.

### B. The Wrongful Discharge Count

In his complaint, Rouse alleges that his discharge was wrongful and contrary to public policy because the discharge was without just cause, in violation of a reasonable expectation of permanent employment, occurred without prior complaint concerning his conduct and while he was performing his duties adequately. In his resistance to the motion for summary judgment, Rouse instead argues that his discharge was wrongful and contrary to public policy because it was the result of his "whistle-blowing" to the FDIC, and because Hill used Rouse as a scapegoat for his own mismanagement of the Bank.

Defendants argue that because the "whistle-blower" discharge claim cannot stand, there is no action contrary to public policy upon which to base a wrongful discharge claim by an at-will employee. Defendants also argue that Rouse admitted in his deposition that he had no contract for employment and that he was aware that he could be discharged at any time for any reason. Defendants assert that, while they did not need a reason to discharge Rouse from his at-will employment, they discharged him for incompetence in the management of the Bank.

The Iowa Supreme Court was slow to recognize a cause of action for the wrongful discharge of an at-will employee, instead re-

lying on the general rule that an at-will employee may be terminated at any time, for any reason. *See Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978); *Harper v. Cedar Rapids Television Co.*, 244 N.W.2d 782, 791 (Iowa 1976); *Allen v. Highway Equip. Co.*, 239 N.W.2d 135, 139 (Iowa 1976). In *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193 (Iowa 1985), the court stated that

> [t]his court has never expressly recognized a public policy exception [to the employment at will doctrine], although we recently noted its increasing acceptance in other jurisdictions. [Citations omitted].
>
> While we hinted in *Abrisz* that, under proper circumstances, we would recognize a common-law claim for a discharge violating public policy, we did not apply it there because the facts did not establish such a violation. We observed, moreover, that "[c]ourts should not declare conduct violative of public policy unless it is clearly so." *Abrisz*, 270 N.W.2d at 456. It has been observed, in fact, that successful common-law claims for wrongful discharge have been based in large part on violations of independent statutory policy, not those established by court decisions. *See* Note, *Protecting At–Will Employees [Against Wrongful Discharge: The Duty to Terminate Only in Good Faith]*, 93 Harv.L.Rev. at 1822–23.

*Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 196 (Iowa 1985). The court then went on to find an express public policy prohibiting discharges for "disabilities," but held that a claim of wrongful discharge based on a disability was preempted by the exclusive remedies of Iowa Code Ch. 601A (now Iowa Code Ch. 216). *Id.* As in *Abrisz*, the court again refused to recognize a claim of wrongful discharge in violation of public policy in *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98 (Iowa 1985), because "we simply observe that this case would not fall into such an exception." 376 N.W.2d at 105. In *Haldeman*, the plaintiff's claim of wrongful discharge was based on her discharge as a cashier following discovery of "unexplained

shortages." *Id.* In *Cross v. Lightolier Inc.*, 395 N.W.2d 844 (Iowa 1986), the Iowa Supreme Court recognized that jurisdictions were split on whether an action for wrongful discharge under a mandate of public policy is a contract or tort action. 395 N.W.2d at 849. However, the court upheld the trial court's conclusion that plaintiff's claim of breach of an oral contract was a contract and not a tort claim, and reiterated that "[e]mployment at will ... cannot be used as a basis for an action for wrongful discharge or breach of employment contract." *Id.* (quoting *Haldeman, supra*, at 105).

It was not until 1988 that the Iowa Supreme Court recognized a cause of action for discharge that frustrates a well-recognized and defined public policy of the state in the case of *Springer v. Weeks & Leo Co., Inc.*, 429 N.W.2d 558, 560 (Iowa 1988) (hereinafter *Springer I* ).[7] However, the court considered the cause of action to be one of tortious interference with a contract of hire. *Springer I, supra*, at 560. The court later concluded that this characterization "may have been misleading," and cited cases clarifying the court's development and refinement of the tort. *Springer v. Weeks & Leo Co., Inc.*, 475 N.W.2d 630, 632–33 (Iowa 1991) (hereinafter *Springer II* ). The court has construed *Springer I* as holding that if the discharge of an employee at will is in violation of public policy, the employee has a cause of action in tort against the employer. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 685 (Iowa 1990). *See also Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 637 (Iowa 1990) (in *Springer I*, "the court recognized an at-will employee's right to compensation for wrongful discharge in violation of a 'clearly articulated public policy of this state' "); *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989) (citing *Springer I* for the same proposition).

 As the law now stands in Iowa, the general rule is still that an at-will employee may be discharged at any time, for any reason, or no reason at all. *Borschel v. City of Perry*, 512 N.W.2d 565, 566 (Iowa 1994); *Lara v. Thomas*, 512 N.W.2d 777, 781

---

7. The opinion in *Springer I* cites no fewer than thirteen other states that had judicially recognized the public policy exception to employment at will.

(Iowa 1994); *French v. Foods, Inc.*, 495 N.W.2d 768, 769 (Iowa 1993); *Grahek v. Voluntary Hosp. Co-op.*, 473 N.W.2d 31, 34 (Iowa 1991); *Fogel, supra*, at 455. The court has recognized two exceptions to this general rule in which a cause of action for wrongful discharge of an at-will employee will lie: The first is where the discharge is in clear violation of a "well-recognized and defined public policy of this state," and the second is where a contract is created by an employer's handbook or policy manual. *Borschel, supra*, at 566; *French, supra*, at 769-70; *Fogel, supra*, at 455. *See also Lara, supra*, at 782 (case involved "one of the exceptions," discharge in violation of public policy); *Grahek, supra*, at 34 ("termination of an employment at-will is generally not actionable in the absence of discrimination or a public policy violation."); *Vaughn, supra*, at 638 (public policy exception only discussed); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 355 (Iowa 1989) (public policy exception only discussed). The public policy exception is based on the theory that the law should not allow employees to be fired for reasons that violate public policy. *Borschel, supra*, at 567 (citing 82 Am.Jr.2d, *Wrongful Discharge* § 15, at 687 (1992)).

▇▇▇▇ Under the public policy exception, the Iowa Supreme Court has recognized causes of action for tortious discharge where an employer's retaliatory discharge would conflict with certain legislatively declared goals. *Lara, supra*, at 782. Such policies may be expressed in the constitution and the statutes of the state, *Borschel, supra*, at 567 (citing 82 Am.Jr.2d, *Wrongful Discharge* § 19, at 692 (1992)), although enforcement of the tort based on some policies is preempted by enforcement under the statutes embodying those policies themselves:

> The legislature may explicitly prohibit the discharge of an employee who acts in accordance with a statutory right or duty. *See, e.g.*, Iowa Code ch. 216 (1993) (civil rights statute transferred from Iowa Code ch. 601A). Discharge of an employee because of age, race, creed, color, sex, national origin, religion, or disability is an unfair employment practice. Iowa Code § 216.6. Remedies are provided employees who are discharged in violation of the statute. *See*

Iowa Code § 216.15. Our civil rights statute, however, preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts. *Hamilton v. First Baptist Elderly Hous. Found*, 436 N.W.2d 336, 341-42 (Iowa 1989).

*Borschel, supra*, at 567-68. The *Borschel* court then identified the circumstances in which Iowa courts had found a public policy basis for the tort:

> In the absence of an express prohibition, the court of appeals found an implied cause of action for wrongful termination when the reason for discharge is the employee's failure or refusal to violate a law in the course of employment. *Wilcox v. Hy-Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa App.1990). The court of appeals found that the violation of a statute prohibiting an employer from requiring an employee to take a polygraph examination was a violation of public policy, thus a private cause of action existed. *Id.* at 872. At the time the claim arose the statute did not expressly allow for a cause of action. This statute was later amended to so provide. *Id.*
>
> Also we have found an implied prohibition against retaliatory discharge based on an employee's exercise of a right conferred by a clearly articulated legislative enactment. *See Lara v. Thomas*, 512 N.W.2d 777, 780 (Iowa 1994) (discharge in retaliation for filing partial unemployment claim); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989) (employee discharged because she threatened to file a workers' compensation claim); *Springer [II]*, 429 N.W.2d at 560 (cause of action exists when the employee's discharge serves to frustrate the public policy expressed in the workers' compensation statute).

*Borschel, supra*, at 568. A wrongful or retaliatory discharge in violation of public policy is therefore an intentional wrong committed by the employer against an employee who chooses to exercise some substantial right. *Niblo, supra*, at 355 (citing *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir.1979)). The remedy for the tort should be for the employee's complete injury,

including out-of-pocket loss of income and causally connected emotional harm. *Id.*

 Rouse conceded in his deposition that he had no contract for employment and that he understood that he could be discharged at any time. Rouse must therefore identify a public policy that has been violated in his case to come within the exception to the at-will employment doctrine. In the present case, the court has already concluded that Rouse cannot make out a claim of discharge in violation of 12 U.S.C. § 1831j. Thus, the court need not consider whether this federal statute is a "well-recognized and defined public policy of" the state of Iowa.

If Rouse's action is to lie, there must be some other public policy basis. Rouse has offered no such viable basis. Rouse's claims that the discharge was without just cause, in violation of a reasonable expectation of permanent employment, occurred without prior complaint concerning his conduct and while he was performing his duties adequately, do not identify any statutory, constitutional, or even case law articulation of public policy. Nor does his allegation that he was discharged to make him the scapegoat for Hill's mismanagement of the Bank. With no basis in public policy, Rouse cannot take advantage of the public policy exception to the at-will employment doctrine. Defendants are therefore entitled to summary judgment on Rouse's claim of wrongful discharge.

### C. The Claim For Breach Of Covenant Of Good Faith And Fair Dealing

Rouse's claim of breach of an implied covenant of good faith and fair dealing can fair little better. Defendants correctly argue that the Iowa Supreme Court has never recognized such a cause of action. In *Fogel, supra,* at 456–57, the court found that

[t]he doctrine stems from the implied duty of good faith and fair dealing recognized in all contracts. *See* Restatement (Second) of Contracts § 205 (1981). Applied in the employment context, an employee proving a prima facie case of unjust termination could shift to the employer the burden of proving good faith as a defense. The classic case invoking such a duty of good faith would be the discharge of a thirty-year employee six months before a pension

vests, or the dismissal of an employee for spurning the affections of a co-worker.

Only a small handful of states have adopted the doctrine. Although Fogel suggests we adopt the action as a tort, four of the five states that recognize the covenant treat it as a contract-based action. New Hampshire, the leading state recognizing the covenant of good faith, has since limited the action to dismissals that are in violation of public policy.

The majority of jurisdictions that have addressed the covenant have unequivocally rejected it.

*Fogel, supra,* at 456–57 (citations omitted). The Iowa Supreme Court has since interpreted *Fogel* as expressly rejecting a cause of action for breach of an implied covenant of good faith and fair dealing in employment situations. *Porter v. Pioneer Hi–Bred Int'l, Inc.,* 497 N.W.2d 870, 871 (Iowa 1993); *French, supra,* at 771; *Grahek, supra,* at 34.

 In *Fogel,* the court's rejection of the cause of action was in part because the facts in the record simply did not compel consideration of the claim. *Fogel, supra,* at 457 (plaintiff claimed discharge owing to medical disability, but court upheld discharge because he was unfit to work in a food service establishment). The Iowa Supreme Court has subsequently refused to reconsider its refusal to recognize the cause of action where the bad faith claim would be preempted by Iowa Code Ch. 601A (now Iowa Code Ch. 216) because the bad faith alleged was discrimination. *Grahek, supra,* at 34. Also, in order for an action for breach of implied covenant of good faith and fair dealing to lie, there must be, virtually by definition, an act of bad faith. *Grahek, supra,* at 34. Mere breach of contract, by itself, is not enough. *Id.*

 In the present case, the court sees no reason to consider a cause of action specifically rejected by the Iowa Supreme Court on a number of occasions. The court has determined that there has been no action in violation of public policy, hence under the New Hampshire formulation of the tort, there would be no cause of action. *Fogel, supra,* at 457 (citing *Howard v. Dorr Woolen*

*Co.,* 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980)). Nor do the facts in this case demonstrate anything like the classic cases of breach of good faith and fair dealing identified by the Iowa Supreme Court. *Id.* at 456. Dismissal of an at-will employee, as long as it is not for discriminatory reasons or in violation of public policy, simply provides no basis for this federal court to assume that the Iowa Supreme Court would recognize a cause of action it has previously rejected. Even were Rouse able to show that his dismissal was on the basis of age, such a claim would be cognizable only under Iowa Code Ch. 216, because it would be Rouse's exclusive remedy, and not as a common-law tort of breach of covenant of good faith and fair dealing. *Grahek, supra,* at 34; *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 341–42 (Iowa 1989). Defendants are therefore entitled to summary judgment on Rouse's claim of breach of covenant of good faith and fair dealing.

## D. The Age Discrimination Claim

Rouse's Count IV alleges age discrimination in violation of Iowa Code Ch. 216 (1993). Rouse argues that he has presented a *prima facie* case of age discrimination because he was a member of a protected class, he was qualified for the job he was performing, he was discharged, and he was replaced by a younger individual who had comparable or lesser qualifications. Rouse was 54 at the time he was discharged, and his replacement, Robert Baird, was 42. Rouse argues that although both Rouse and Baird fall within the protected age group under Iowa law, it would gut the age discrimination protections of Iowa Code Ch. 216 to allow employers to replace employees with much younger people. Furthermore, Rouse argues that a genuine issue of material fact exists that defendants' purportedly legitimate reason for his

discharge, misconduct or incompetence, is unworthy of belief.

Defendants assert that Rouse was discharged for incompetence rather than for any reason related to his age. They also assert that Rouse's replacement, although younger, was better qualified than Rouse to run the Bank during the period when the Bank would be dealing closely with regulators. They compare Rouse's experience in the banking industry and his training in the area of real estate appraisal with Baird's B.Sc. degree in Agriculture, MBA courses at Drake University and courses at the Graduate School of Banking in Boulder, Colorado, and ten years of employment with the Iowa Department of Banking as a Bank Examiner. Furthermore, they argue that Rouse has no basis on which to argue that he was discriminated against on the basis of age. They support their argument that there is a total lack of proof on this claim with excerpts from Rouse's deposition quoted in the margin.[8]

In the past, the Iowa Supreme Court has applied federal principles and analytical framework to civil rights cases under Iowa Code Ch. 216. *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893 (Iowa 1990); *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989) (civil rights cases brought under chapter 601A (now 216) will be "guided by federal law" and "federal cases"); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983) (same). However, the federal act does not preempt state age discrimination laws, so that the state court looks to its own act to determine if plaintiff is a protected person. *Hulme, supra,* at 631.

Under Iowa's age discrimination law, Iowa Code Ch. 216, the plaintiff establishes a *prima facie* case of age discrimination if the plaintiff shows that he or she is a member of the protected age group, the plaintiff was qualified for the job he or she

---

8. The excerpts of Rouse's deposition defendants have presented to show an admission of the lack of proof are the following:

A. I think Hill thought I was too old to correct the problems.
Q. How old is Hill?
A. 50, 51, 52.
Rouse Deposition, p. 85, line 23 through p. 86, line 1.

Q. Did anybody say that to you?
A. No.
Rouse Deposition, p. 86, lines 7–8.
Q. No direct evidence, Mr. Rouse, at this point, is that right?
A. No.
Rouse Deposition, p. 86, lines 18–20.

was performing, the plaintiff was discharged, and the plaintiff was replaced by a younger person who had comparable or lesser qualifications. *Landals, supra,* at 894; *Fogel, supra,* at 453. Membership in the protected class is age-neutral under Iowa Code Ch. 216, which prohibits discrimination in employment "because of age" of an employee, with the exception that under Iowa Code § 216.6(3), persons under eighteen years of age are not covered if they are not considered by law to be adults, and under Iowa Code § 216.6(5), the employee is over forty-five years of age in an apprenticeship program. *Hulme, supra,* at 632. Thus, both Rouse and Baird are members of the protected class under the Iowa age discrimination statute. The court also recognizes that Rouse at least arguably has shown the other elements of his *prima facie* case. He was qualified for his position at the Bank, he was discharged, and he was replaced by a younger person with comparable qualifications.[9]

■ The court therefore turns to the next stage in the analysis of Rouse's age discrimination claim. That framework is described in section IV.A.2.a of this ruling, so that it need not be repeated here. Suffice it to say that defendants have offered, and Rouse has challenged, a legitimate, non-discriminatory reason for Rouse's discharge. Specifically, defendants assert that Rouse was discharged for incompetence and because defendants believed his past difficulties with regulators would be a liability as the Bank would be required to work closely with regulators to overcome its difficulties. Defendants will be entitled to summary judgment unless Rouse can demonstrate that there is a genuine issue of material fact that this reason is pretextual or unworthy of belief. Rouse need not show that age was defendants' sole or exclusive consideration, but must prove that age made a difference or was "a determinative factor" in the employer's decision. *Hulme, supra,* at 632 (citing *Smithers v. Bailar,* 629 F.2d 892, 897 (3d Cir.1980)).

■ Rouse has presented no specific facts to support his suspicion that his discharge was based on his age. He concedes that he has no evidence beyond his subjective belief that Hill thought he was "too old" to correct the problems at the Bank. However, at hearing on this matter, counsel for Rouse did demonstrate that Hill had at first cited as his legitimate, non-retaliatory basis for discharging Rouse his belief that the FDIC had "mandated" Rouse's removal, and further that the statements of the FDIC officials involve show this assertion of a "mandate" for Rouse's removal to be false. Whether Hill believed in good faith that the FDIC had mandated Rouse's removal is not an issue this court can decide on summary judgment. Such an issue presents a jury question. *St. Mary's, supra,* —— U.S. at ——, 113 S.Ct. at 2749 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.") As this court has observed,

> [plaintiff's] evidence of age discrimination is relatively weak. Nevertheless, issues of an employer's motivation in discharging an employee—often riddled with subtleties and nuances from which vastly different conclusions may be drawn—are particularly well-suited for determination by the ultimate trier of fact—in this case . a jury.

*Holmes v. Marriott Corp.,* 831 F.Supp. 691, 713 (S.D.Iowa 1993).[10] There is therefore a genuine issue of material fact as to whether defendants' proffered reason for Rouse's discharge is pretextual. Defendants are not entitled to summary judgment on Rouse's claim of age discrimination.

### E. The Intentional Infliction Of Emotional Distress Claim

Finally, defendants argue that they are entitled to summary judgment on Rouse's claim of intentional infliction of emotional

---

9. The court need not address here the question of whether Baird is comparably, less, or better qualified than Rouse.

10. The same reasoning does not apply to the whistle-blower count, because Rouse was unable to meet the burdens of presenting a *prima facie* case as to that count.

distress. They argue that Rouse cannot produce evidence of any outrageous conduct on the part of the defendants, nor can he demonstrate severe emotional distress as the result of his discharge. Rouse argues that Hill acted outrageously in using Rouse as the scapegoat for the Bank's problems, and in initially asserting that the FDIC had mandated his removal, then backing off that position and asserting Rouse was fired for poor performance. Rouse asserts that as a result of his discharge, he has suffered destruction of his career and reputation in the community, anxiety and high blood pressure requiring medication, nightmares, headaches, dizziness, and loss of enthusiasm for his career.

The elements for recovery on the common law tort of intentional infliction of emotional distress in Iowa are:

(1) outrageous conduct by the defendant;

(2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) plaintiff suffered severe or extreme emotional distress;

(4) actual and proximate cause of the emotional distress by the defendant's conduct.

*Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991) (citing *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 635–36 (Iowa 1990), and *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 118 (Iowa 1984)). The Iowa Supreme Court has said that when plaintiff brings a claim of intentional infliction of emotional distress, "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991); *Mills v. Guthrie County Rural Elec.*, 454 N.W.2d 846, 849 (Iowa 1990); *M.H. by and through Callahan v. State*, 385 N.W.2d 533, 540 (Iowa 1986); *Reihmann v. Foerstner*, 375 N.W.2d 677, 681 (Iowa 1985); *Vinson v. Linn–Mar Comm. Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984); *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983). The Iowa Supreme Court has required an extreme of egregiousness to elevate (or downgrade) mere bad conduct to the level of outrageousness. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 198 (Iowa 1985). For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cutler, supra*, at 183 (citing *Vaughn, supra*, at 636); *Engstrom v. State*, 461 N.W.2d 309, 320 (Iowa 1990) (quoting *Vinson, supra*, at 118); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)). Indeed, the Iowa court has said that

[t]he tort law should encourage a certain level of emotional toughness. "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d, *supra*. "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936).

*Northrup, supra*, at 198–99 (quoting *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976)). Peculiar susceptibility, by reason of physical or mental condition of the person affected, is a factor in considering whether conduct is outrageous, although "major outrage" is always the crucial element of the tort. *Cutler, supra*, at 183 (quoting Restatement (Second) of Torts § 46, comment f). In *Northrup*, the court quoted extensively from the Restatement (Second) of Torts § 46, comment d, for a statement of the level of bad conduct necessary to be held to be outrageous:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which

would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Northrup, supra,* at 198. Iowa Courts have held, as the Restatement suggests, that it is not even sufficient that the conduct in question would have entitled the plaintiff to punitive damages. *Mills, supra,* at 850 (citing *Vinson, supra,* at 118).

It is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious. *See, e.g., Cutler, supra,* at 183 (letter advising partner who had suffered from a period of mental illness that he could not return to law practice without further review by partners was not extremely outrageous and did not generate a genuine issue of material fact on the claim); *Engstrom, supra,* at 320 (negligent failure to search for plaintiffs' adopted daughter's natural father before placing her in plaintiffs' home, and telling adoptive parents the father was dead without verifying his death, were not outrageous); *Kirk v. Farm & City Ins. Co.,* 457 N.W.2d 906, 911 (Iowa 1990) (insurance company's refusal to pay the full amount of uninsured coverage not outrageous); *Mills, supra,* at 849 (rural electric cooperative's conduct in using split bolt connectors instead of compression connectors to connect grounding jumper wire to main neutral line, in failing to discover dangerous situation that such omission presented, and in conducting settlement negotiations through insurance carrier with cooperative customers who sustained fire damage was not sufficiently outrageous); *Tomash v. Deere Indus. Equip. Co.,* 399 N.W.2d 387, 392–93 (Iowa 1987) (bringing of criminal charges was reasonably appropriate and

therefore not outrageous); *Reihmann, supra,* at 681 (claim of improperly exerting influence to transfer employee was too speculative, and transfer of employee after complaints from customers was not outrageous); *Northrup, supra,* at 198–99 (firing for alcoholism not outrageous in light of extensive responsibilities of plaintiff); *Bossuyt v. Osage Farmers Nat. Bank,* 360 N.W.2d 769, 777 (Iowa 1985) (bank's refusal to pay own cashier's check not outrageous); *Vinson, supra,* at 119 (deliberate campaign to badger and harass employee not outrageous although "petty and wrong, even malicious"); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (banker's refusal to extend credit causing creditor to default on other obligations not sufficiently outrageous to support jury verdict on emotional distress claim); *Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983) (offer to marry made to woman still married and intended for her was not outrageous conduct as to woman's husband, even if it showed poor judgment); *Action Real Estate Corp. v. Bulechek,* 309 N.W.2d 502, 505 (Iowa 1981) (refusal to pay commission on sale of land not outrageous); *Amsden v. Grinnell Mut. Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972) (refusal to pay fire insurance benefits during period of arson investigation to insured suspected of arson by authorities not outrageous). Few cases can be located where an Iowa court actually held the conduct alleged was sufficiently outrageous. *See, e.g., Blong v. Snyder,* 361 N.W.2d 312, 315–17 (Iowa App.1984) (supervisors' excessive and groundless harassment of employee sufficiently outrageous); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 907–08 (Iowa App.1982) (defective construction of home and filing of mechanic's lien so shocking as to support jury verdict for emotional distress).

■ The court concludes that Rouse has not alleged any sufficiently outrageous conduct to support his claim of intentional infliction of emotional distress. At most, Rouse's allegations are that Hill fired him to make him the scapegoat for the Bank's problems. Whether or not the court agrees with the Bank's business decision to fire Rouse during the Bank's crisis with federal examiners, allocating to him a good share of the blame for

the Bank's problems, such a basis for discharging an at-will employee who was certainly in a responsible position can hardly be considered outrageous. Rouse has failed as a matter of law to present evidence of outrageous conduct on the part of defendants. The court concludes that defendants are therefore entitled to summary judgment on Rouse's claim for infliction of emotional distress.

In the alternative, the court concludes that Rouse's evidence of emotional distress is insufficient as a matter of law to support the claim of intentional infliction of emotional distress. The Iowa Supreme Court has established stringent standards for this element of the tort as well. In Iowa, "the law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Tappe v. Iowa Methodist Medical Center,* 477 N.W.2d 396, 404 (Iowa 1991) (quoting *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44 (Iowa 1984), in turn quoting Restatement (Second) of Torts § 46, comment j (1965)). The plaintiff must prove more than the fact that he felt bad for a period of time. *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 636 (Iowa 1990); *Steckelberg v. Randolph,* 448 N.W.2d 458, 461 (Iowa 1989); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 908 (Iowa App.1982). Rather, the plaintiff must also put on proof of physical ailments that plagued him during the relevant period of time and medical evidence of the cause of these ailments. *Vaughn, supra,* at 636. In many cases where the Iowa Supreme Court has held that a fact question was engendered on the issue of emotional harm and causation, the court has relied on the testimony of physicians and psychiatrists. *Id.* (citing cases).

The Iowa Supreme Court has found a variety of symptoms and combination of symptoms inadequate to support a claim of emotional distress. *See, e.g., Tappe, supra,* at 404 (event "worst thing" that ever happened to plaintiff, followed by symptoms of feeling upset and confused fell far short of proof necessary to sustain a *prima facie* case); *Vaughn, supra,* at 636 (evidence that plaintiff was upset, grouchy, nervous, and that his sex life deteriorated not sufficient); *Bates v. Allied Mut. Ins. Co.,* 467 N.W.2d 255, 261 (Iowa 1991) (evidence that plaintiff was so angry he felt physical pain, was sleepless, could only think about the event, felt cheated by the legal system and did not trust lawyers or anyone else, was haunted by fears that occupied his waking moments, interrupted his sleep, and prevented him from enjoying life was insufficient); *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44–45 (Iowa 1984) (one plaintiff "quivered" when the subject came up, the other worried about what other people thought, but such evidence was insufficient); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (plaintiff was depressed, not interested in life, and downhearted, but such evidence was insufficient); *Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981) (plaintiff's evidence that he was "very, very down," felt "super badly," was disappointed, and believed he had lost everything for a month or two was insufficient).

In contrast, cases in which the Iowa courts have found evidence of sufficient emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct. *Steckelberg, supra,* at 462 (citing the following cases: *Meyer v. Nottger,* 241 N.W.2d 911, 915–16 (Iowa 1976) (plaintiff was nauseous, had difficulty breathing, and was hospitalized for acute heart spasm); *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 855 (Iowa 1973) (plaintiff cried frequently, lost weight, and suffered abdominal cramps); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 908 (Iowa App.1982) (plaintiff was hospitalized with a near nervous breakdown, fear, and shock)). *See also Wambsgans v. Price,* 274 N.W.2d 362, 366 (Iowa 1979) (although Supreme Court believed evidence of distress from loss of home was sufficient, jury had been improperly instructed and matter was remanded). Rouse has not presented evidence of such dire symptoms. Rather, Rouse asserts that as a result of the actions of defendants he has suffered destruction of his career and reputation in the community, anxiety and high blood pressure requiring medication, nightmares, headaches, dizziness, and loss of enthusiasm for his career. These

symptoms, although uncomfortable or disconcerting, are not "so severe that no reasonable [person] could be expected to endure it." *Tappe, supra,* at 404.[11] Furthermore, medical evidence of causation is entirely lacking from the summary judgment record. The court concludes that on the ground of insufficient evidence of emotional distress as well as insufficient evidence of outrageous conduct, defendants are entitled to summary judgment on Rouse's claim of intentional infliction of emotional distress.

## VI. LACK OF A FEDERAL QUESTION

The dismissal of Count I leaves this case without a federal question upon which to base federal court jurisdiction. The court must therefore consider whether or not to retain jurisdiction over the pendant state law claim on which this court has not granted summary judgment, the age discrimination claim under Iowa Code Ch. 216.

 Prior to enactment of the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, in 1990, a federal court's authority to exercise pendant jurisdiction over a state law claim was a matter of discretion involving the weighing of several factors:

> In [*United Mine Workers v.*] *Gibbs,* [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] the Court set out the basic principles which should be applied where federal and state claims are presented together. First, the federal claim must be substantial enough for the vesting of subject-matter jurisdiction. Second, the federal and state claims must present one constitutional "case." If they derive from a common nucleus of operative fact, and if aside from their federal or state character, they normally would be tried in one proceeding, this element is present. Third, even if the court has the power in a constitutional sense to hear the entire case, it need not do so, for "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."

383 U.S. at 726, 86 S.Ct. at 1139. The exercise of the court's discretion involves "considerations of judicial economy, convenience and fairness to litigants" and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Ibid.*

*Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1345–46 (8th Cir.1980); *see also Hess v. St. Joseph Police Pension Fund,* 788 F.2d 1344, 1346 (8th Cir.1986) (discretion to entertain state claims should be exercised when judicial economy, convenience, and fairness weigh in favor of adjudication of the state claims). The advantages of adjudication of state law claims with federal claims are realized when the claims require similar types of proof and there is no prejudice to the parties as the result of hearing both claims. *Hess, supra,* at 1347. Review of the court's exercise of pendant jurisdiction must be made "at every stage of the litigation." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing the *Gibbs* factors).

Most of the factors involved in the court's analysis of whether or not to exercise pendant jurisdiction stated above are retained and codified in the statute defining the supplemental jurisdiction of the federal courts:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (West Supp.1991). A court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,

---

11. This is not to say that Rouse's symptoms would not sustain an award of damages for emotional distress should he prevail on another of his claims. *See, e.g., Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990) (distinguishing between proof necessary for award of damages for emotional distress and proof of emotional distress to support separate tort claim); *Nesler v. Fisher & Co., Inc.,* 452 N.W.2d 191, 199 (Iowa 1990) (same); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 357 (Iowa 1989) (same); *Dickerson v. Young,* 332 N.W.2d 93, 98 (Iowa 1983) (same); *Edmunds v. Mercy Hosp., Cedar Rapids,* 503 N.W.2d 877, 881 (Iowa App.1993).

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (West Supp.1991). Where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg*, 969 F.2d 721, 726–27 (8th Cir.1992). *See also O'Connor v. State of Nev.*, 27 F.3d 357, 362 (9th Cir.1994); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1285 n. 14 (3d Cir.1993); *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 65–66, n. 3 (2nd Cir.1991); *Carroll v. Borough of State College*, 854 F.Supp. 1184, 1200 (M.D.Pa. 1994).

■■■■ In the present case, the court has indeed dismissed all claims over which it has original jurisdiction. Furthermore, the state law claim that remains, although not particularly unusual or complex, does require the application of case law that has grown up around a specific state statute, Iowa Code Ch. 216. This federal court does not believe that it is appropriate or necessary for the federal court to adjudicate matters that are plainly within the purview and expertise of the state court where there is no independent federal jurisdiction.[12] This matter will therefore be dismissed. Rouse may refile his claim in state court for adjudication of the remaining state law claim pursuant to Iowa's "failure of action" statute.[13]

## VII. CONCLUSION

The court concludes that plaintiff's motion to amend must be denied as untimely. The court further concludes that defendants are entitled to summary judgment on all of Rouse's claims except the state law age discrimination claim. The claim of retaliatory discharge for whistle-blowing under 12 U.S.C. § 1831j must be dismissed against defendants Hill and HIC because the statute does not provide for a cause of action against majority shareholders of the depository institution, only against the institution itself. The whistle-blower claim must also be dismissed as to the Bank because Rouse cannot meet the burdens of his *prima facie* showing under either the standards stated in the statute or the standards employed in Title VII retaliatory discharge cases. Defendants are entitled to summary judgment on Rouse's claim of wrongful discharge because Rouse has presented no evidence of a discharge contrary to public policy. Defendants are entitled to summary judgment as a matter of law on Rouse's claim for breach of the im-

**12.** This disposition will allow Rouse to assert his defamation claim along with his state law age discrimination claim in one judicial proceeding, thus promoting judicial economy.

**13.** Iowa Code § 614.10, Iowa's "failure of action" statute, provides as follows:

If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

In order for a plaintiff's cause of action to come within section 614.10, there are four requirements:

1. The failure of a former action not caused by plaintiff's negligence.

2. The commencement of a new action brought within six months thereafter.

3. The parties must be the same.

4. The cause of action must be the same.

*Beilke v. Droz*, 675 F.2d 194, 195 (8th Cir.1982) (citing *Hartz v. Brunson*, 231 Iowa 872, 2 N.W.2d 280, 283 (Iowa 1942)). In *Beilke*, the U.S. District Court for the Eastern District of Wisconsin had dismissed a lawsuit against the insurer on the ground that the insurer may not be sued directly under a Wisconsin statute. *Id.* The suit was refiled in federal court in Iowa, and the court determined that Iowa Code § 614.10 would permit the action to go forward if the insured and the insurer were the "same party" within the meaning of the statute. *Id.* The Eighth Circuit Court of Appeals certified to the Iowa Supreme Court the question of whether an insured and its insurance company were "the same" within the meaning of the statute. *Id.* The Iowa Supreme Court answered in the affirmative. *Id.* In the present case, the court sees no reason why Rouse could not meet the requirements of the Iowa "failure of action" statute to refile his age discrimination claim in Iowa district court even if it would otherwise be time barred because it was timely filed in federal court and has been dismissed through no fault of Rouse's.

plied covenant of good faith and fair dealing because the Iowa Supreme Court has repeatedly rejected such a cause of action in employment cases. Rouse has generated a genuine issue of material fact on his claim of age discrimination, and defendants are therefore not entitled to summary judgment as a matter of law on this claim. Finally, the court concludes as a matter of law that Rouse has alleged no conduct of defendants that is sufficiently outrageous nor has he established sufficient emotional distress to sustain a claim for intentional infliction of emotional distress. Defendants' August 15, 1994, motion for summary judgment is granted as to counts I, II, III, and V, and denied as to Count IV. Summary judgment is entered in favor of defendants and against plaintiff on counts I, II, III, and V, and this matter is dismissed for lack of a federal question. The dismissal of this case shall be held in abeyance for 120 days during which time plaintiff shall attempt to establish jurisdiction in an Iowa state court over his claim of age discrimination. This court may withdraw its dismissal and entertain the age discrimination claim on the merits if plaintiff demonstrates that during the time provided he has made good faith efforts to establish the jurisdiction of an Iowa state court over his claim, but has been unable to do so.

IT IS SO ORDERED.