# IN THE COURT OF APPEALS OF IOWA

No. 22-1329
Filed April 12, 2023

IN RE THE MARRIAGE OF SARAH A. ENKE
AND JASON A. ENKE

Upon the Petition of
SARAH A. ENKE,
        Petitioner-Appellant,

And Concerning
JASON A. ENKE,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Rustin T.

Davenport, Judge.


        Sarah Enke appeals the denial of her request to modify physical care and

the grant of Jason Enke's request for a postsecondary education subsidy.

**AFFIRMED AS MODIFIED.**


        Sophie Wanek of McCormally & Cosgrove, P.L.L.C., Des Moines, for

appellant.

        Jacqueline R. Conway of Laird Law Firm, P.L.C., Mason City, for appellee.


        Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Sarah Enke appeals the June 2022 modification order concerning her dissolution decree with Jason Enke, which was the parties' third trip to court seeking modification. In this round, she challenges the district court's limitation to the testimony of one of her witnesses, Steve Kaduce; its refusal to modify the physical-care arrangement; and its imputation of a postsecondary education subsidy obligation on her and not on Jason. Jason asks for appellate attorney fees. We find no abuse in the district court's discretion in limiting Kaduce's testimony and affirm the district court's modification order maintaining physical care of the two minor children with Jason and requiring a postsecondary education subsidy obligation for Sarah. However, we modify the order to require a postsecondary education subsidy for Jason. Finally, we decline to order appellate attorney fees.

**I. Background Facts and Prior Proceedings.**

Jason and Sarah were married in 1999 and had four children—D.E., J.E., B.E., and P.E. The marriage was dissolved in 2014 by dissolution decree, adopting the parties' stipulation they share joint legal custody and joint physical care. Later that same year, Jason brought a contempt action that Sarah answered with a counterclaim alleging Jason violated the terms of the dissolution decree. In the district court's ruling on the applications for rule to show cause, it noted the parties struggled to communicate and cooperate with one another, but found only Jason in contempt for making disparaging comments about Sarah while the children were present.

In 2015, Jason filed a petition for modification seeking physical care; again, Sarah counterclaimed seeking the same result for her. In the first modification action, both parents recognized joint physical care was not in the best interests of the children. And, as the district court noted in its first modification order, "shared parenting [had] proven to be 'unworkable'" and "communication [had] been difficult and [had] essentially broken down between them, that the accounting for parenting expenses was impossible, and that the two parents have very different priorities and parenting styles." The district court awarded Sarah physical care.

Less than two years later, in 2017, Jason again filed a petition for modification. At that time, D.E., then in high school, had moved in with his father full-time because he found it to be a less stressful environment. During the second modification hearing, the parents again agreed that joint physical care was not in the children's best interest. Overall, the court found that all of the children had "become more anxious [and] stressed since the last modification" caused by "continued friction between the parents, especially concerning clothes, activities, and finances." Because of these stressors, "[s]everal credible witnesses testified that the children appear to be more relaxed and at ease and less anxious in their father's care." Moreover, the district court found Sarah was intentionally keeping information about the children—including doctor appointments and extracurricular activities—from Jason. Noting the problems arising out of Sarah having physical care were not previously anticipated, the district court found a substantial change in circumstances justifying placement of the children in Jason's physical care while Sarah was to have liberal visitation. Sarah appealed the ruling, which was affirmed

by a panel of this court that November. *See In re Marriage of Enke*, No. 18-0360, 2018 WL 6130309, at *3 (Iowa Ct. App. Nov. 21, 2018).

In August of 2020, Jason filed a petition for a postsecondary education subsidy—pursuant to Iowa Code section 598.21F (2020)—for D.E., who was a sophomore in college, and J.E., who would start her freshman year the following fall. In his filing, Jason pointed to the language in the original stipulation allowing for the court to determine their respective contributions for college expenses. Sarah answered with a counterclaim seeking a third modification; she sought to change the physical care of B.E. and P.E., the only children who were still minors. She accused Jason of alienating the children from her and asked the district court to reinstitute a joint physical care arrangement. She requested a period of no contact between Jason and the minor children so that she and the children could participate in a reunification period, after which time she and Jason would co-parent through a parent coordinator. In response, Jason amended his petition to ask for sole legal custody of the minor children or sole decision-making for health care.

At the time of trial, both D.E. and J.E. attended public in-state universities and had earned scholarships and grants towards their education. They both also worked when they were home in the summers and on weekends. And, the district court was informed that in 2020 Sarah earned $54,725 each year, while Jason earned $110,626 annually.

The modification trial was set to begin July 28, 2021. On July 14, Sarah noticed the telephone deposition of Kaduce, a licensed mental health counselor who met with the children around the time of the 2017 modification and continued

to see Sarah.  The deposition was set for July 19, 2021.  Jason objected, noting that Kaduce was not timely disclosed as an expert witness.  The district court held[1] that Kaduce could testify, but only as to factual matters and not expert opinions.  But, Kaduce was allowed to offer some information with the understanding the district court would sort out what was fact and what was expert opinion and disregard the latter.

The trial occurred over four days in July and October of 2021.  Both parents outlined moments of contention that impacted the children, such as fighting at D.E.'s graduation party, doctors refusing to treat the children because of discontent between the parents, verbal sparring at the children's school events, a lack of flexibility for special occasions and family events, and various occasions when the children were left feeling they had to choose between their two parents.  A parade of witnesses came through the courtroom giving their opinion on the parents' personalities—outlining their best and worst moments.  And a wide sampling of text messages and emails exchanged between the parties was admitted as evidence to show their communication issues.  What everyone involved could agree on was Jason and Sarah's demonstrated inability to co-parent.

Both minor children—in eighth and ninth grade at the time—testified that they felt more comfortable at their father's home and preferred the current

---

[1] A hearing occurred on July 19, but the transcript of the hearing regarding the issue was not provided.  "It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon.  The court may not speculate as to what took place or predicate error on such speculation." *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) (internal citation omitted).  We are limited, then, to written filings and additional information on the issue the district court provided in its final argument.

arrangement to their experience with joint physical care. They pointed to concerns with fighting between Sarah and her paramour and Sarah speaking poorly about Jason or D.E. P.E. wished for the current schedule to stay in place while B.E. hoped not to have a formal visitation schedule so he could choose when he wanted to be with Sarah.[2] Both children testified Jason urged them to maintain a relationship with Sarah.

After the final trial date, Sarah moved for the district court to reconsider its ruling on Kaduce. Attached to the motion was a letter, marked as an exhibit, that had not been offered at trial. The district court held that Kaduce was serving as an expert witness for Sarah and, because he was not properly disclosed as an expert, Jason was prejudiced. So, the district court denied Sarah's motion to reconsider.[3]

The district court asked the parties for post-trial filings indicating their calculations for the postsecondary education subsidy. The remaining balance for D.E.'s freshman year after his grants, scholarships, loans, and work study was $1570.27; for his sophomore year, it was $8019.00. For D.E's last two years of college, Jason asked that Sarah cover one-half of the estimated cost of tuition, fees, housing, books, and personal expenses less D.E.'s grants, scholarships, loans, and work study—totaling $4229.50 each year. For J.E., Jason provided a similar calculation, subtracting J.E.'s scholarships, grants, and loans from the total

---

[2] At the time of the October hearing dates, B.E. was living full-time with Jason, though he testified his father encouraged him to go for visitation with Sarah.
[3] The district court explicitly noted that even if it had considered all of Kaduce's testimony, it would have come to the same conclusion because of his limited contact with the children since the last modification action as he last counseled the children in February 2018.

cost of tuition, fees, room, meals, books, and personal expenses, taking into account that she had some scholarships that would only cover her freshman year. With these calculations, he asked that Sarah cover half of what remained— $1928.00 for J.E.'s freshman year and $5518.67 for each year after. Jason had also already paid $330 toward J.E.'s fees and asked to be reimbursed for half of that cost. In her reply, Sarah argued she had insufficient funds to pay for the subsidies due to her own student loan[4] and her lesser monthly income compared to Jason.

Ultimately, the district court maintained physical care with Jason, denied Jason's request for sole legal custody or sole decision-making for health care, and modified Sarah's child support. The district court also found that, taking into consideration she is now only paying child support for two children rather than four, Sarah had the reasonable ability to contribute $2400 a year towards her adult children's postsecondary education; it ordered Sarah to pay a postsecondary education subsidy of $785 for D.E.'s freshman year[5] and $2361.79 for his sophomore year. Considering Sarah's ability to pay, the court then ordered her to pay $1600 toward D.E.'s junior year and $1200 toward his senior year. For J.E., the court ordered Sarah to pay $800 for her freshman year and $1200 for her sophomore year. If D.E. had a fifth year of college, this payment arrangement would continue until D.E. graduated or turned twenty-three years of age, whichever

---

[4] Sarah owes over $125,000 in her own student loans for two separate master's degrees in social work and holistic health.

[5] This reflected the actual balance for D.E.'s freshman year rather than what Jason paid out of pocket.

came earlier; but, once D.E. graduated or turned twenty-three, Sarah would contribute $2093 for J.E.'s education until she graduated or turned twenty-three.

Sarah filed a post-trial motion for an order nunc pro tunc stating the order had "inadvertently failed to assign responsibility to [Jason] for his specific contribution amount to [D.E.] and [J.E.]'s post-secondary education." She also stated "she [did] not dispute her [postsecondary education subsidy] contribution." The district court filed an order noting Sarah had not asked for the court to establish a postsecondary education obligation for Jason, neither party had argued the issue at trial, and it was not included in the post-trial filings specifically ordered on the postsecondary education subsidy issue. The district court then scheduled a hearing on the issue and, in a subsequent ruling, reaffirmed that the issue had not been raised and denied the motion.

Sarah appeals, (1) arguing the district court abused its discretion by limiting Kaduce's testimony, (2) claiming the court erred in denying her petition for modification, and (3) contesting the postsecondary education subsidy.

**II. Analysis.**

**A. Steve Kaduce.**

Sarah first argues Kaduce was improperly limited in the testimony he was allowed to provide at trial when the district court ruled he could testify to factual matters but not expert opinions. While Kaduce testified fully at trial about his opinions, the district court noted that topics that were expert in nature, such as diagnosis or causes of the children's mental health conditions, would not be considered in the ruling. "'We review whether a district court properly admitted [or excluded] expert testimony for abuse of discretion.' But when we review the

interpretation of a rule of civil procedure, such as rule 1.500(2), our review is for errors at law." *McGrew v. Otoadese*, 969 N.W.2d 311, 319 (Iowa 2022) (citations omitted).

Addressing Jason's position over notice of expert testimony, the district court determined that Kaduce's opinions had not been timely disclosed. So we turn to the disclosure requirements that apply to expert witness testimony, including Iowa Rule of Civil Procedure 1.500(2)(b) and (c) which states:

> b. *Witnesses who must provide a written report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .
> . . . .
> c. *Witnesses who do not provide a written report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (1) The subject matter on which the witness is expected to present evidence under Iowa Rules of Evidence 5.702, 5.703, or 5.705.
> (2) A summary of the facts and opinions to which the witness is expected to testify.

Sarah argues that, because Kaduce was a "treating physician" rather than one hired for the purposes of litigation, the requirements in rule 1.500(2)(b) do not apply. *See Mengwasser v. Comito*, 970 N.W.2d 875, 881 (Iowa 2022) (noting rule 1.500(2)(b) is "focused on how the expert came to be involved, not when the expert developed their opinions"). We agree that Kaduce was not "retained or specially employed" to provide expert testimony under rule 1.500(2)(b). But, rule 1.500(2)(c) applies to expert witnesses when rule 1.500(2)(b) does not, including in this situation. *See id.* ("Rule 1.500(2)(c), in turn, fills the disclosure gap as to experts who do not have to provide rule 1.500(2)(b) reports."). Sarah does not provide an

argument why rule 1.500(2)(c) would not apply in her initial briefing. And, while she asserts Kaduce's designation as a fact witness in her response to interrogatories should be sufficient to satisfy the notice requirement, she provides no explanation why—if we accepted this premise—the door would open for Kaduce to offer opinions on subjects that require expert training without proper disclosure.[6]

As a final note, we consider that the district court evaluated the witnesses during the trial and specifically found it was "unpersuaded by Kaduce's opinions" and that the opinions did not "justify Sarah's proposed remedy of a no contact order followed by joint physical care." *See Tappe ex rel. Tappe v. Iowa Methodist Med. Ctr.*, 477 N.W.2d 396, 401 (Iowa 1991) (finding reversal was not justified because the district court's wrongful exclusion of expert testimony was harmless). We find no abuse of the court's discretion in limiting Kaduce's testimony based on Sarah's failure to comply with disclosure requirements in rule 1.500(2)(c).

**B. Physical-Care Modification.**

*i. Physical Care.*

Sarah asks us to give her physical care on appeal; Jason asserts that she failed to preserve error for this request. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court

---

[6] In her reply brief, Sarah also argues that, because Kaduce did not testify until the October trial date, Jason had plenty of notice to conduct discovery and prepare for cross-examination. "Generally, we will not consider issues raised for the first time in a reply brief." *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018). But even if this was properly raised and we agreed with Sarah's premise that Jason was given notice, she still failed to comply with the summary requirement. *See* Iowa R. Civ. P. 1.500(2)(c)(2).

before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). In her counterclaim, Sarah asked the court to "grant the modification to provide that the parties must participate in co-parent counseling and utilize the services of a parent coordinator and that the children should be in shared physical care of the parties with a 50/50 schedule." Sarah argues that although she did not originally seek physical care, her answer and counterclaim outlined that she was "more capable of ministering to the long-range best interests of the children than Jason" and she supplied the district court with child support guidelines showing the children in her physical care. But the district court's modification order only refers to Sarah's request for joint physical care, not any alternative status. Likewise, Sarah filed no post-trial motion flagging for the district court that it failed to rule on any request for physical care. *See id.* ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal."). Sarah failed to preserve error on her request for physical care, so we only review her request for joint physical care.

### ii. Joint Physical Care.

At trial, Sarah argued the district court should have instituted a joint physical care arrangement. And on appeal, as noted above, it is not clear if she abandoned that position or if the request for a joint physical care arrangement remains for our consideration. In any event, we review the district court's ruling on a petition to modify the physical care provision de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions

since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). These proffered changes "must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary" and "must relate to the welfare of the children." *Id.* Then, the parent seeking the modification "must prove an ability to minister more effectively to the children's well being." *Id.* This is a heavy burden because "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.* As a guiding principle,

> Physical care issues are not to be resolved based upon perceived fairness to the [*parents*], but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

We agree with the district court's assessment that "[t]his family's situation is extremely sad and frustrating." Unfortunately, it is not new—their inability to successfully coparent existed not only at the time of the previous modification, but has been persistent through multiple court actions involving this family. From our vantage point, each parent shares the responsibility for the distress and anxiety these children have suffered. But when considering Sarah's request to return to joint physical care, we note the ability of the parents "to communicate and show mutual respect" and their "degree of conflict" with one another are incredibly important factors in determining whether joint physical care is appropriate. *See id.* at 698 ("In short, a stormy marriage and divorce presents a significant risk factor that must be considered in determining whether joint physical care is in the best

interest of the children. The prospect for successful joint physical care is reduced when there is a bitter parental relationship and one party objects to the shared arrangement."); *cf. Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) ("Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care."). There is no question that these parents have consistently struggled to co-parent[7] and that the past joint physical care arrangement caused a lot of stress for their children.

With these parents' demonstrated inability to work together, a joint care plan would—as it did in the past—work against the children's best interests. We can therefore neither find that there was a substantial change in circumstances in this case nor that a joint-physical-care arrangement is in the children's best interests.

### C. Postsecondary Education Subsidy.

In her motion to reconsider the modification ruling, Sarah confirmed "she does not dispute her contribution" to the older children's postsecondary education. But on appeal, Sarah argues that the district court (1) should not have required her to reimburse D.E. and J.E. for money already put toward their college expenses, (2) should not have imposed a postsecondary education subsidy for D.E. because of his contentious relationship with her,[8] and (3) should have also imposed a

---

[7] At the modification hearing, Jason testified he and Sarah had not "had a co-parenting conversation in several years."

[8] *See* Iowa Code § 598.21F(4) ("A postsecondary education subsidy shall not be awarded if the child has repudiated the parent by publicly disowning the parent, refusing to acknowledge the parent, or by acting in a similar manner.").

postsecondary education subsidy on Jason. The first two arguments were not raised at trial nor in Sarah's post-trial filing about the subsidy, and they are not addressed in any of the court's orders.[9] *See Meier*, 641 N.W.2d at 537. And, the district court's post-trial ruling focused solely on Jason's obligation because of Sarah's acquiescence in the contributions set out in the modification order. *See In re K.D.*, No. 20-1634, 2021 WL 5105900, at *2 (Iowa Ct. App. Nov. 3, 2021) ("K.D.'s present argument is 'inconsistent' with his position in the district court. . . . K.D. is judicially estopped from asserting a contrary position on appeal." (citations omitted)).

Our review, then, is limited to whether the district court should have imposed a postsecondary education subsidy obligation on Jason. Our review is de novo. *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012). We give weight to the fact findings of the district court but are not bound by these findings. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005).

First, in the original stipulation, the parties agreed that:

> The expenses for the postsecondary education subsidy for the children, pursuant to Iowa Code § 598.21F, will be determined at a later time when it is known what qualifying institution each will attend and the financial conditions of the parties. If the parties cannot agree as to their respective contribution to the children's college support will be, the Court will retain jurisdiction to determine the obligation upon application of either party without that party having to show a substantial change in circumstances.

Second, our legislature determined that "[t]he court may order a postsecondary education subsidy if good cause is shown." Iowa Code § 598.21F(1). Historically

---

[9] Though the issues are not addressed in the ruling, it is possible that Sarah raised them at the hearing; but, as with the hearing about Kaduce, the transcript of the hearing was not provided for our review. *See F.W.S.*, 698 N.W.2d at 135.

Jason was covering some of the shortfall on the college expenses and brought the modification action to compel Sarah's participation. Thus, he did not dispute there was good cause to order a postsecondary education subsidy. To determine good cause, "the court shall consider the age of the child, the ability of the child relative to postsecondary education, the child's financial resources, whether the child is self-sustaining, and the financial condition of each parent." *Id.* § 598.21F(2). To calculate the obligation, the court is to take "the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include the reasonable costs for only necessary postsecondary education expenses," *Id.* § 598.21F(2)(a), and subtract the child's expected contribution before "apportion[ing] responsibility for the remaining cost of postsecondary education to each parent," *Id.* § 598.21F(2)(c).

Sarah points to Iowa Code section 598.21F(2)(c), flagging that the subsidy is supposed to be apportioned to "*each parent.*" And, in interpreting the statute's three-step process for apportioning this responsibility, Iowa courts have repeatedly described the third step as requiring the court to "allocate the remaining costs between the parents in an amount not to exceed thirty-three and one-third percent of the total cost of postsecondary education." *See, e.g.*, *In re Marriage of Larsen*, 912 N.W.2d 444, 449 (Iowa 2018). The district court was charged with dividing responsibility for the subsidy between the child and both parents when Jason raised the issue, so Sarah was not required to ask again. *See Griffin Pipe Prods. Co. v. Bd of Review*, 789 N.W.2d 769, 772 (Iowa 2010) ("Our issue preservation rules are not designed to be hypertechnical.").

As for D.E.'s freshman and sophomore years of college and J.E.'s freshman year, the district court already considered Jason's voluntarily payments towards that shortfall. Recognizing Sarah's financial tensions, the district court limited her responsibility for postsecondary education subsidy for the two older children to definitive numbers. *See Vaughan,* 812 N.W.2d at 693 (recognizing to qualify for a postsecondary education subsidy, the child "must be between the ages of eighteen and twenty-two and must have demonstrated capacity to succeed in postsecondary education"). And, toward the college expense that Jason already paid, the district court directed Sarah to make specific payments that essentially reimbursed the child for part of the remaining postsecondary education costs paid by Jason. We do not disturb those findings.

Going forward, as the district court did for Sarah, we consider what, if any, postsecondary education subsidy should be paid by Jason, as the parties acknowledged should be done under the original stipulation and as the statute requires. *See id.* at 694 ("Once the remaining cost has been determined, the statute directs the court to apportion the responsibility of the remaining cost to each parent."). Jason set out what the obligations would be for the future years until the statutory obligation ends and told the district court he would split the net costs not paid by the child's loans and scholarships with Sarah. Considering those costs, we find Jason shall pay to the school or child the remaining balance of the net education cost for each child, after reduction of Sarah's payment and the child's contributions, so long as it does not exceed the statutory limitation for his share. *See In re Marriage of Ossowski*, ___ N.W.2d ___, No. 21-1154, 2022 WL 3070834 at *3–4 (Iowa Ct. App. Aug. 3, 2022) (detailing the steps to calculate the subsidy

and define the maximum obligation of each parent under the parameters of section 598.21F). For example, here the evidence showed that the gross cost to attend Iowa State University for J.E. was $22,156 per year. So, Jason should cover the remaining shortfall after Sarah's court ordered contribution, not to exceed any amount over his thirty-three and one-third percent statutory obligation ($22,156÷3 = $7385). Jason has the ability to cover his statutory share of these costs.

In sum, we affirm the district court's determination of the postsecondary obligation of Sarah and modify the order to establish Jason's responsibility for any remaining college expense not to exceed thirty-three and one-third percent of the cost to attend the state university.

### D. Appellate Attorney Fees.

Jason requests appellate attorney fees and provided an affidavit of fees and expenses without detailing the number of hours spent or the hourly rate charged. Though the parties do not have a right to appellate attorney fees, we do have the discretion to grant them. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (citation omitted). While Jason has prevailed on most issues, he is in a superior financial position to Sarah. We decline to award appellate attorney fees.

## III. Conclusion.

For the above reasons, we modify the district court's modification order to

institute a postsecondary education subsidy payable by Jason, but otherwise affirm. We do not award appellate attorney fees.

**AFFIRMED AS MODIFIED.**